IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | NO. 25-22-1 |
| **DONNELL ROBINSON** | : | |
| **JERMAINE WEEKS** | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM

**J. Perez**                                                                                                                 **November 14, 2025**

      The government has charged Defendants Donnell Robinson and Jermaine Weeks in connection with a series of armed robberies of grocery and retail stores in Philadelphia and nearby Cheltenham Township during the fall of 2024.[1] The case is currently set for a consolidated jury trial. At the core of these motions is a recorded interview of Weeks following his arrest. In that interview, Weeks admitted driving Robinson to several of the relevant locations. He also acknowledged making trips that the government contends correspond to the charged robberies. At the same time, Weeks repeatedly asserted that he believed he was simply helping Robinson run errands and denied any knowledge that robberies were being committed. The government seeks to use portions of that statement at a joint trial, over both Defendants' objections.

---

[1] On January 16, 2025, a grand jury returned a seventeen-count indictment, charging both Robinson and Weeks with robbery and attempted robbery which interferes with interstate commerce, and aiding and abetting, in violation of 18 U.S.C. § 1951(a) and 2 (Counts Five, Seven, Nine, Ten and Twelve). Additionally, Robinson is charged alone with robbery and attempted robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a) (Counts One, Two, Three, Four, Fourteen, Fifteen, and Sixteen); using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Six, Eight, Eleven, and Thirteen): and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Seventeen). The Defendants are not charged with Conspiracy.

Currently pending before the Court are: (1) the government's motion in limine regarding Weeks' custodial statement, (2) Robinson's motion for relief from prejudicial joinder under Federal Rule of Criminal Procedure 14, and (3) Weeks's motion to join Robinson's request for severance.

For the reasons that follow, the Court concludes that: (1) Weeks's custodial statement is admissible against him under the ordinary rules governing a defendant's own statements, with appropriate completeness under Federal Rule of Evidence 106; (2) that same statement cannot be fairly and constitutionally presented to a jury at a joint trial of Weeks and Robinson; and (3) severance, rather than wholesale exclusion, is the least drastic adequate remedy. The Court will therefore sever the trials of Robinson and Weeks. Weeks's statement will be admissible at his separate trial, subject to the limitations described below, but may not be offered against Robinson at his trial unless Weeks testifies and is subject to cross-examination.

I.   BACKGROUND

This case arises from a series of armed robberies committed across Philadelphia and nearby Cheltenham Township during the fall of 2024. Defendant Donnell Robinson is charged with twelve robberies and attempted robberies of retail establishments—including Dollar General, Family Dollar, ACME, Boston Market, Dollar Tree, and ShopRite—between September 21 and October 28, 2024, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and with four corresponding firearm offenses under § 924(c), as well as one count of felon-in-possession under § 922(g)(1). His co-defendant, Jermaine Weeks, who is Robinson's brother, is charged in five of those incidents—two on October 17, 2024, and three on October 24, 2024—each alleging that he aided and abetted Robinson by driving him to and from the stores while Robinson committed the robberies at gunpoint.

The government's theory is that Robinson was the principal actor and that Weeks knowingly assisted as a driver and lookout. The government contends that Robinson entered the stores, brandished a handgun, and demanded cash from clerks, while Weeks remained outside as the getaway driver.

After his arrest, Weeks waived his Miranda rights and gave a recorded interview to the FBI on October 29, 2024. During that interview, Weeks admitted that he drove Robinson to several of the charged locations and identified himself in surveillance stills. However, he maintained that he was unaware of any robberies, explaining that he believed Robinson "was just running errands," "picking up some things," and "cashing checks." He repeatedly referred to Robinson as his brother during the interview.

The government seeks to introduce Weeks's admissions at a joint trial while redacting any references to Robinson's name, substituting neutral terms such as "the other person." Weeks argues that such sanitization distorts the meaning of his statement and violates the completeness rule under Federal Rule of Evidence 106, especially after the 2023 amendment. Robinson, for his part, contends that any version of Weeks's statement identifying him—whether expressly or by context—would violate the Confrontation Clause under *Bruton v. United States*.

II.   **CONTENTIONS OF THE PARTIES**

The government has moved in limine to admit Weeks's statements as party-opponent admissions under Federal Rule of Evidence 801(d)(2)(A). It proposes to introduce only the inculpatory portions of the interview through the testimony of case agents, without playing the recording or providing a transcript, and to avoid *Bruton* problems by replacing references to Robinson with neutral phrases such as "another person" or "the other guy." *See Bruton v. United*

*States*, 391 U.S. 123 (1968). The government proposes to call agents to recount selected admissions—for example, that Weeks drove Robinson to particular stores at particular times—while omitting Weeks's explanations that he believed he was assisting his brother with errands and his repeated denials of knowledge of any robberies. It argues that the omitted portions are self-serving hearsay that cannot be admitted in the government's case-in-chief.

Weeks opposes the motion. He argues that the government's proposal would present the jury with a distorted and incomplete picture of his interview, in violation of the completeness requirements of Federal Rule of Evidence 106, especially as amended in 2023. He maintains that his explanations about errands and lack of knowledge are integral to the meaning of the statements the government seeks to use and must be admitted "in fairness" if any of the interview is presented. He further contends that the government's sanitized version cannot be squared with the Supreme Court's recent decision in *Samia v. United States*, 599 U.S. 635 (2023), because it would convert his mixed, partially exculpatory statement into what appears to be a straightforward confession.

Robinson separately moves for relief from prejudicial joinder, arguing that any fair presentation of Weeks's statement will inevitably and powerfully incriminate him, in violation of *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny. Weeks has moved to join Robinson's request and likewise contends that a joint trial is untenable if his statement is admitted with the context he is entitled to under Rule 106. The government opposes severance. It argues that neutral-substitution redactions, coupled with limiting instructions, adequately address any Confrontation Clause concerns under *Samia* and that a joint trial is preferable under Federal Rules of Criminal Procedure 8 and 14.

### III. LEGAL STANDARDS

#### A. Party-Opponent Statements and Hearsay

A defendant's own statement, when offered against him by the government, is "not hearsay" under Federal Rule of Evidence 801(d)(2)(A). Such statements are generally admissible as substantive evidence, subject to the Constitution and other rules, including Rules 106, 403, and 802. A defendant generally may not introduce his own out-of-court statements for their truth through other witnesses, because such statements are hearsay when offered by the declarant himself. See *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986). However, when, as here, the government offers portions of a recorded interview, the analysis is complicated by the rule of completeness, discussed below.

#### B. Federal Rule of Evidence 106 and the 2023 Amendment

Federal Rule of Evidence 106, commonly known as the *rule of completeness*, provides that if one party introduces all or part of a writing or recorded statement, "an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." The rule prevents a party from presenting an incomplete or misleading fragment of a statement that distorts its meaning. See *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72 (1988). The guiding principle is fairness: the adverse party is entitled to enough of the statement to allow the factfinder to understand what was actually said.

Before 2023, courts were divided on whether Rule 106 created an independent basis for admissibility or merely a procedural timing provision. The December 1, 2023 amendment resolves that split. The rule now expressly provides that when fairness requires admission of additional

portions of a statement, "**[t]he adverse party may do so over a hearsay objection.**" Fed. R. Evid. 106 (emphasis added).

The amendment codifies the principle that a party may not create a misleading impression by introducing selective excerpts while excluding necessary context. It does not authorize admission of all self-serving narrative; the touchstone remains whether the additional portions are necessary to prevent distortion. The government's motion relies on pre-amendment cases holding that Rule 106 could not overcome a hearsay objection, but those decisions rest on the prior version of the rule, which lacked the new, explicit authorization.

Rule 106 still does not function as a hearsay exception; it operates on a different principle—that a party who creates a misimpression through selective presentation forfeits any hearsay objection to the completing material. § 5085 Material Introduced for Completeness, 21 Fed. Prac. & Proc. Evid. § 5085 (2d ed.). As the Advisory Committee explained in adopting the amendment, "the rule of completeness, grounded in fairness, cannot fulfill its function if the party that creates a misimpression . . . can then object on hearsay grounds and exclude a statement that would correct the misimpression." Rule 106, Advisory Committee Note (2023).

C.  *Bruton*, *Samia*, and the Confrontation Clause in joint trials

The Sixth Amendment guarantees a criminal defendant "the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Bruton*, the Supreme Court held that the admission, at a joint trial, of a non-testifying codefendant's confession that directly implicated the defendant violated the Confrontation Clause, even where the jury was instructed to consider the confession only against the declarant. 391 U.S. at 135–37. Under *Crawford v. Washington*, 541 U.S. 36 (2004), testimonial statements by a witness who does not testify at trial are inadmissible

against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Custodial police interrogations are paradigmatic testimonial statements. Id. at 52–53. *Crawford* applies to the use of such statements in any criminal trial, including severed trials; *Bruton* addresses the special posture of joint trials where the statement is admitted against the declarant but inevitably affects a co-defendant.

Later cases refined *Bruton*'s scope. In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Court held there was no *Bruton* violation where the confession was redacted to eliminate any reference to the defendant and any indication of her existence, and the connection to the defendant arose only when the confession was linked with other evidence at trial. Id. at 211. In *Gray v. Maryland*, 523 U.S. 185 (1998), by contrast, the Court held that a confession redacted by replacing the defendant's name with obvious blanks or symbols still facially implicated the defendant and thus violated *Bruton*. *Id*. at 192–95.

Most recently, in *Samia v. United States*, 599 U.S. 635 (2023), the Supreme Court held that the admission at a joint trial of a non-testifying codefendant's confession that used neutral phrases such as "the other person" in place of the defendant's name, combined with a proper limiting instruction, did not violate the Confrontation Clause. 599 U.S. at 645–48. The Court emphasized that the redacted confession did not directly inculpate the defendant on its face and became incriminating only when linked with other trial evidence. *Id.* at 647–48.

As discussed below, *Samia*'s holding depends on the redacted statement's remaining both facially neutral as to the co-defendant and substantively accurate as to the declarant's meaning. Neither condition can be met here. Fairness under Rule 106 requires inclusion of the very portions of Weeks's interview that explain why he was driving Robinson, what he believed was happening,

7

and how the two are siblings. Once those contextual statements are included, the "other person" cannot plausibly be anyone but Robinson; the context itself functions as an identification.

Conversely, if the Court were to omit that context in an effort to preserve facial neutrality, the resulting version of the statement would materially distort Weeks's narrative—turning a mixed, partially exculpatory account into what appears to be an unqualified admission. In other words, sanitizing the statement to avoid incriminating Robinson would fundamentally alter its meaning for Weeks, while including the context needed for fairness would necessarily reveal Robinson's identity to the jury. Because any redaction sufficient to protect one defendant would mislead the jury as to the other, the statement cannot remain both neutral and accurate in the way *Samia* requires. For that reason, *Samia*'s reasoning does not apply.

### D. Joinder and Severance

Federal Rule of Criminal Procedure 8(a) permits the joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(b) similarly permits joinder of defendants who "are alleged to have participated in the same act or transaction or in the same series of acts or transactions."

Even where joinder is proper under Rule 8, Rule 14(a) authorizes the Court to sever defendants or provide other relief if joinder "appears to prejudice a defendant or the government." Severance is not required simply because evidence is admissible against one defendant but inadmissible against another, or because defendants pursue antagonistic defenses. *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). Instead, the Court should grant severance only where a joint

trial would "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. When less drastic measures—such as limiting instructions or tailored evidentiary rulings—are adequate, the Court should prefer them. *Id.*

### IV.  ANALYSIS

#### A.  Admissibility and Completeness of Weeks's Statement

Weeks's custodial interview is admissible against him as a party-opponent admission under Rule 801(d)(2)(A), subject to the usual *Miranda*, voluntariness, and Rule 403 safeguards. But the government's proposal to admit only selective excerpts—limited to Weeks's acknowledgment that he drove Robinson to certain stores—cannot be squared with Rule 106 as amended. The amendment to Rule 106 explicitly authorizes the Court to admit such contextual portions over a hearsay objection.

Here, Weeks's narrative about errands and lack of knowledge is not mere background; it is the lens through which the jury is asked to interpret the very conduct the government wishes to present as incriminating. To tell the jury only that Weeks drove his brother to the charged locations, without his contemporaneous explanation of why he did so and what he believed was happening, risks converting a mixed statement into what appears to be an unqualified admission of guilt. That is precisely the sort of distortion Rule 106 is designed to prevent.

Accordingly, if the government introduces Weeks's interview at trial, it must do so in a manner that includes the portions necessary to allow the jury to understand the substance of his narrative—not just his movements, but his contemporaneous description of his state of mind. The Court does not hold that every exculpatory comment in the interview must be admitted. The

government is not required to present Weeks's entire narrative any more than it is required to play a recording from start to finish. But where it chooses to present specific statements about the charged events, it must include any immediately surrounding passages that are necessary to prevent those statements from being taken out of context or materially misconstrued.

The government's preference to prove the statement solely through agent testimony, rather than by playing portions of the recording or providing a transcript, does not change this analysis. Whether by recording, transcript, or testimony, the government may not cherry-pick admissions in a way that misleads the jury about the substance of what Weeks actually said.

### B. *Bruton* at a Joint Trial

Having determined that fairness under Rule 106 requires inclusion of Weeks's contextual explanations along with his admissions, the Court must consider whether such a version of the statement can be admitted at a joint trial of Weeks and Robinson consistent with *Bruton*, *Samia*, and the Confrontation Clause.

The government relies heavily on *Samia*, arguing that it may replace references to Robinson with neutral phrases such as "another person," and rely on limiting instructions to confine the statement's use to Weeks. *Samia*, however, is meaningfully distinguishable.

In *Samia*, the declarant gave a full confession to the charged crime, and the redaction at issue merely substituted neutral labels for the non-testifying defendant's name while preserving the substance of the confession. The Supreme Court held that, because the redacted confession did not directly inculpate the defendant on its face and became incriminating only when linked with other evidence, it did not violate the Confrontation Clause when accompanied by an appropriate limiting instruction. 599 U.S. at 647–48.

Here, Weeks did not simply confess to the robberies. His interview is a mixed statement, combining incriminating descriptions of his movements with repeated assertions that he believed he was helping his brother with innocuous errands and lacked knowledge of any robberies. Once Rule 106 fairness is taken into account, the government cannot fairly present Weeks's admissions without also presenting his explanation of what he thought he was doing and why. When that context is included, Weeks necessarily identifies Robinson as the person he was driving—whether described as "my brother," by name, or by specific, easily matched descriptors tied to vehicles, locations, and surveillance footage that the jury will understand to refer to Robinson.

Under those circumstances, even a "neutral" substitution does not truly render the statement facially non-incriminating as to Robinson. The redacted statement would still describe trips taken with a particular other person to the very locations and times of the charged robberies, in the very vehicles and patterns the government attributes to Robinson. In the context of the trial, the jury will "unavoidably" understand that the "other person" is Robinson; the statement thus functions more like the redactions disapproved in *Gray* than the ones approved in *Samia*. See *Gray*, 523 U.S. at 192–95.

Moreover, the government's proposal risks a different kind of distortion: by stripping away Weeks's explanations while preserving only his admissions about conduct, it would present the jury with an account that is significantly harsher than the one Weeks actually gave. *Samia* did not involve such selective excision of exculpatory context. That is a Rule 106 problem, not just a Confrontation Clause problem.

The Court therefore concludes that Weeks's interview, in the fair and complete form required by Rule 106, cannot be presented at a joint trial without either (1) materially distorting his narrative in order to protect Robinson, or (2) presenting a statement that is so clearly and

powerfully incriminating as to Robinson that no limiting instruction can adequately protect his Confrontation Clause rights.

### C. Severance Versus Exclusion

That conclusion leaves the Court with two options: (1) exclude Weeks's custodial statement entirely and proceed with a joint trial; or (2) sever the trials, allow the statement to be used at Weeks's trial, and bar its use at Robinson's trial absent Weeks's testimony. The Court must choose the least drastic remedy adequate to cure the prejudice. *Zafiro*, 506 U.S. at 539.

Excluding Weeks's statement would cure the *Bruton* problem, but at a substantial cost. The interview is central evidence of Weeks's own conduct and claimed state of mind; it describes the precise trips, locations, and patterns the government contends correspond to the charged robberies. To forbid the government from using any part of that interview in order to preserve the convenience of a joint trial would unduly impair the truth-seeking function of Weeks's trial.

Severance, by contrast, resolves both sets of concerns without requiring the preclusion of probative evidence. Once Weeks is tried alone, his interview is simply his own statement, admissible under Rule 801(d)(2)(A), subject to Rule 106, Rule 403, and the usual Miranda and voluntariness requirements. There is no *Bruton* concern when the declarant and the defendant are one and the same. At a separate trial of Robinson, Weeks' custodial statement would be testimonial hearsay offered against someone other than the declarant; absent Weeks's testimony and an opportunity for cross-examination, *Crawford* bars its use.

The Court therefore concludes that severance under Rule 14(a) is the appropriate remedy. Joinder was initially proper under Rule 8, as the charges arise from the same series of acts or transactions. However, in light of the evidentiary and constitutional considerations just discussed,

12

a joint trial would "compromise a specific trial right" of Robinson—the right to confront witnesses against him—and force an unnatural presentation of Weeks's statement that risks distorting his narrative. *Zafiro*, 506 U.S. at 539. Severing the cases, rather than suppressing the statement outright, is the least drastic way to protect both defendants' rights and the integrity of the factfinding process.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that the government may introduce Weeks's recorded interview against him at his own trial as a party-opponent admission under Rule 801(d)(2)(A), but only in a form that satisfies Rule 106's completeness requirement. The government may not, however, offer the selectively edited version it proposes for use in a joint trial. Because a fair presentation of the statement cannot be squared with Robinson's Confrontation Clause rights, the Court will grant Robinson's request for relief from prejudicial joinder—and Weeks's motion joining that request—and will sever the defendants' trials. Finally, the Court holds that Weeks's custodial statement may not be used as evidence against Robinson at his separate trial unless Weeks testifies and is subject to cross-examination.